In re the MARRIAGE OF Hugh C. BRIGGS and Pauline A. Briggs.

Upon the Petition of Hugh C. BRIGGS, Appellant,

And Concerning,

Pauline A. BRIGGS, Appellee.

No. 2–56625.

Supreme Court of Iowa.

Feb. 19, 1975.

Price & McGrevey, Fort Dodge, for appellant.

Gray & Gray, Rockwell City, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and REYNOLDSON, JJ.

LeGRAND, Justice.

After 21 years, this marriage was dissolved by decree entered June 28, 1973. The decree awarded respondent wife (Pauline) custody of the four children, provided for child support on a reducing scale as each of the children reached the age of twenty-one, divided the property, and allowed respondent attorney fees in the amount of $750.00 in addition to $350.00 previously paid her.

Petitioner (Hugh) appeals from the trial court's decree on the property settlement, the amount and duration of child support, and the award of attorney fees. Pauline cross-appeals on the property settlement only. With some changes as to support, we affirm the trial court and remand for entry of a supplemental decree as provided herein.

As we have said over and over again, precedents are of little help in determining what is a fair division of assets between the parties to a dissolved marriage. Each case depends on its own peculiar circumstances. This is equally true of child support. See In re Marriage of Zoellner, 219 N.W.2d 517, 523 (Iowa 1974); In re Marriage of Matson, 215 N.W.2d 358, 359 (Iowa 1974); In re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974); Madsen v. Madsen, 261 Iowa 476, 479, 154 N.W.2d 727, 729 (1967).

Both parties agree the factors to be considered are those set out in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968) except that the fault concept is no longer applicable. In re Marriage of Williams, 199 N.W.2d 339, 344–345 (Iowa 1972). Of course, in dissolution cases, our review is de novo. In re Marriage of Novak, supra, 220 N.W.2d at 597.

I. In considering this property settlement, which satisfied neither party, we recite generally the evidence upon which it is based. The two principals were the only witnesses. Each testified at length; and each was inclined to exaggerate his or her contributions to the marriage while minimizing those of the other. Each, too, relies upon the *Schantz* formula in urging us, on the one hand, to reduce the award as too great and, on the other, to increase it as too little.

The parties agree they have assets valued at $200,043.00, liabilities of $63,813.65, and a net worth of $136,229.35. Hugh's contributions to the net worth were somewhat greater than Pauline's. At the time of the marriage, he owned outright a 48-acre farm, which was later sold for $13,000.00. This money was invested in a 120-acre farm which now comprises a substantial part of the parties' assets.

Pauline received approximately $9,000.00 from an insurance policy following the death of her first husband. She claims this amount, plus $1,500.00 given her by her first husband's father, went into the marriage coffers. While there is some dispute about the exact use to which this money was put, it is a fair inference from the record that it was used for family purposes.

Both parties worked hard. Hugh is not only an excellent farmer, but also possesses unusual mechanical skill which he turned to considerable financial gain from outside work during the marriage. Pauline helped with the farm work, although not as much as Hugh thought she should. She also maintained the house and reared the four

daughters over whose support there is now some dispute.

█ While Hugh's accomplishments may have been more financially productive, this does not mean Pauline's efforts as wife and mother were less important. Our law does not contemplate a division of property on a price-per-hour basis, as though marriage is a business venture. Husband and wife need not, during happy days, keep a ledger to prove his or her economic value should the marriage later founder. Cf. Madsen v. Madsen, supra, 261 Iowa 480, 154 N.W.2d at 729. The factors listed in Schantz v. Schantz, supra, were not intended to work with mathematical precision. They are simply criteria to help in arriving at a result which, as § 598.21 puts it, is "justified."

█ The record in the present case discloses Hugh and Pauline each made substantial contributions of both capital and labor. While their day-to-day duties differed, we cannot say Hugh gave more to the ultimate economic success than Pauline.

The trial court awarded Pauline certain personal property and ordered Hugh to pay her $50,000.00 over a period of eleven years. She receives $3,500.00 per year for five years, $5,000.00 per year for the next five years, and a final payment of $7,500.00 in the eleventh year. Altogether her share represents approximately 44% of the net worth. Hugh ends up with the remainder of the property, including all the real estate. His share amounts to 56% of what they have amassed.

We believe the trial court's division was eminently fair to both. While Hugh's share is greater than Pauline's, he must take that part of the property which is encumbered. His burden during the next eleven years is not an easy one, if he is to pay off existing indebtedness, satisfy Pauline's annuity installments, and contribute during part of that time to the support of his children.

One of Pauline's objections goes to the trial court's failure to allow interest on her deferred annual payments unless they are not paid when due. This was considered by the trial court and was a factor in fixing the amount she should receive. We see no reason to disagree.

We have reviewed the findings of the trial court and have independently considered the testimony of both Hugh and Pauline. We have also tested the property settlement in the light of Schantz v. Schantz, supra. We affirm the division as made.

. II. We next consider the matter of child support. Hugh's complaints take two principal courses. He argues, first, that the amount allowed is excessive because of Pauline's own earning ability, which the record shows to be approximately $7,500.00 per year. Secondly, he says no support should have been allowed for Linda, who was 19 years old when the decree was entered, and that payments as to the others should have been made terminable at age 18 instead of 21.

We believe there is merit in his second objection and that the support provisions of the decree must be modified because the trial court ignored the provisions of § 598.-1(2), The Code, 1973, in fixing the support Hugh was to pay.

The 64th General Assembly amended § 598.1(2). After the effective date of the amendment (July 1, 1972), the section provided:

"As used in this chapter:

"1. * * *

" 'Support' or 'support payments' means any amount which the court may require either of the parties to pay under a temporary order or a final judgment or decree, and may include alimony, child support, maintenance, and any other term used to describe such obligations. *Such obligations may include support for a child who is between the ages of eighteen and twenty-two years who is regularly attending an approved school in pursuance of a course of study leading to a high school diploma or its equivalent, or*

*regularly attending a course of vocational technical training either as part of a regular school program or under special arrangements adapted to the individual person's needs; or is, in good faith, a full-time student in a college, university, or area school; or has been accepted for admission to a college, university, or area school, and the next regular term has not yet begun; or a child of any age who is dependent on the parties to the dissolution proceedings because of physical or mental disability."* (Emphasis added.)

The italicized portion of the statute was added by the 1972 amendment. At the same time the legislature was considering the growing demand for reducing the age of majority from twenty-one to either nineteen or eighteen. In fact, the same act which amended § 598.1(2) also amended § 599.1 to make nineteen the age of majority. (See Chapter 1027, § 49, Acts of the 64th General Assembly.) Then in 1973 the age of majority was further reduced, this time to eighteen, where it now stands. (See Chapter 140, § 49, Acts of the 65th General Assembly.)

█ In view of this legislative history, we believe the purpose of the 1972 amendment to § 598.1(2) was to bring the obligation to support more in line with the changing concept of adulthood. It is clear the legislature intended that support terminate at eighteen except when the statute specifically provides otherwise. All these exceptions (save the last which deals with physical or mental disability) are concerned with educational pursuits. Parenthetically we mention that support and maintenance as referred to in §§ 598.17 and 598.21 must be determined under the definition of support in § 598.1(2). Applying that definition in the present case, we hold the trial court's decree erroneously provided for child support as to all of these children.

█ First, the trial court erred in allowing any support for Linda, who was only several days from her twentieth birthday when the decree was entered. She was living at home with her mother and was employed as a nurse's aide. While Pauline testified Linda wanted to attend Fort Dodge Community College, she had not been accepted there, nor indeed had she even formally applied. This falls far short of the proof demanded by § 598.1(2) in order to permit an order for support beyond a child's eighteenth birthday.

█ Kristine, the second child, was born May 14, 1955. She was eighteen when the decree was entered, but she was then attending high school. Incidentally, Kristine was omitted from the decree in the trial court's determination of child support. It is clear, however, from the other findings in the decree that this was inadvertent and we here make proper provision for her.

At the time of trial, Kristine's projected graduation date from high school was 1974. Her support should have terminated then because the record is insufficient, as it was in Linda's case, to require Hugh to continue support thereafter.

Paulette was born September 4, 1956. She was seventeen when the decree was entered and reached her eighteenth birthday on September 4, 1974. The evidence showed she is attending high school and will graduate in 1976. Under the record before us, she is entitled to support until that time.

The youngest daughter, Debra, will also graduate from high school in 1976, shortly after her eighteenth birthday. She, too, is entitled to support until then.

Since we do not know what amounts, if any, Hugh has paid toward support, we remand this case to the district court for entry of a supplemental decree according to the following directions:

(1) All provisions for Linda shall be eliminated and Hugh shall be given credit for all amounts paid by him for her support.

(2) Using the amount allowed in the decree for support (after elimination of the portion allowed for Linda), the trial court shall order support at the

rate of $275.00 per month for Kristine, Paulette, and Debra beginning with July, 1973, and continuing through June, 1974, when Kristine should have graduated from high school.

(3) Beginning with July, 1974, Hugh shall pay $200.00 per month for the support of Paulette and Debra to and including June, 1976, when they will have graduated from high school, at which time all support payments shall terminate.

(4) As to all payments already accrued and unpaid, judgment shall be rendered against Hugh after allowing him credit for all support payments made. For payments not yet due, he shall be permitted to pay in two equal installments each month as provided in the original decree.

In modifying the decree we are, of course, limited to the record before us. We do not foreclose the right of either Hugh or Pauline to secure further modification as to *future* payments upon proper application and proof.

 III. The final issue deals with Pauline's request for attorney fees, both in district court and on appeal.

The trial court allowed attorney fees of $750.00 in addition to $350.00 Hugh had already paid. Hugh says this is excessive. We are not inclined to disturb the trial court's award. See In re Marriage of Beeh, 214 N.W.2d 170, 176 (Iowa 1974).

 Pauline also asks an allowance of additional fees for this appeal. Her counsel has submitted an itemized statement of services rendered and time spent. We do not fix the amount to be charged by Pauline's attorney, but simply decide what, if any, portion should be paid by Hugh. In re Marriage of Romig, 207 N.W.2d 780, 783 (Iowa 1973); Geisinger v. Geisinger, 202 N.W.2d 44, 47 (Iowa 1972); In re Marriage of Jayne, 200 N.W.2d 532, 534 (Iowa 1972); Conkling v. Conkling, 185 N.W.2d 777, 787 (Iowa 1971).

We order Hugh to pay $750.00 toward Pauline's attorney fees on this appeal. Any amount in excess of that should be paid by Pauline.

Modified, affirmed and remanded for entry of supplemental decree.