**In re MARRIAGE OF Carolyn J. BYALL and Lowell E. Byall.**

**Upon the Petition of Carolyn J. Byall, Petitioner-Appellee, And Concerning Lowell E. Byall, Respondent-Appellant.**

No. 83–1205.

Court of Appeals of Iowa.

May 22, 1984.

Terry Diane Parsons of Olsen & Parsons, Cedar Falls, for respondent-appellant.

David J. Dutton of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for petitioner-appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Respondent husband appeals from the provisions of a decree dissolving the parties' marriage, challenging the property division and child support award.

Lowell and Carolyn were married in 1960 immediately after receiving their bachelor degrees. Lowell attended the Presbyterian Seminary for the next three years while Carolyn taught school. In 1963, Lowell became a Presbyterian pastor. He has served as a pastor since then except for brief periods in 1981 and 1982. In 1978, Lowell received a doctorate degree from the San Anselmo Seminary. He does not now hold a permanent position, but is on a temporary pastorate in Oregon and earns $15,000 per year. He also receives a housing allowance which brings his gross income up to approximately $18,000. Lowell testified that, if he obtains a permanent pastor's position, his salary will increase. He expressed concern that he may lose his current temporary position and be without a salary for several months.

Carolyn taught school during the marriage except for a five-year period when she stayed home to raise the parties' two children. Since the marriage she has completed all work towards her masters degree except for her thesis. She is currently a school librarian and earns in excess of $21,000 a year. She works on a nine-month contract. There is no evidence that her position is not stable.

The parties have two sons: Kevin, born in 1964; and Craig, born in 1965. Kevin attends Iowa State University, and Craig would be a freshman at Iowa State in the fall of 1983.

Both parties worked diligently during their marriage, and both appear to be concerned about their children's welfare. They entered the marriage with few assets. Lowell's parents loaned them $29,000 in 1978 for the purchase of their home, which they still owned at the time of trial. In December of 1978, Lowell's parents wrote a letter to Lowell and Carolyn stating:

On June 1, 1978, we loaned you $29,000 for a downpayment on a house in Cedar Falls.

This letter is to inform you that we (Russell and Agnes Byall) are making you (*Lowell and Carolyn*) a gift of $12,000 leaving a balance due of $17,000 (emphasis added)

In January of 1979, an identical letter was written forgiving an additional $12,000 and indicating the balance due was $5,000. In January of 1980, a third letter was written forgiving the $5,000 balance. Lowell's parents made these gifts to both Lowell and Carolyn in order to utilize the maximum gift tax exemptions available. Lowell's mother's poor health prompted the gifting as an estate tax saving device. In September of 1982 and December of 1982, Lowell's parents gave the parties an additional $2,000, for a total of $4,000. This money was used for Kevin's college expenses. Lowell's parents considered all gifts to be an advancement on his inheritance, which would be taken into consideration when dividing their estates with his brother.

## I. *Gifted Property*

Lowell argues that because the $29,000 "loan" from his parents to purchase the parties' home was an advancement on his inheritance, the equity in the home should have been awarded to him. The trial court divided the equity equally. He argues that the application of the factors set forth in *In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982), make it clear that all of the proceeds from the sale of the home should be awarded to him. The court in *Thomas* noted that Iowa Code section 598.21 is substantially a codification of the principles established by case law with respect to inherited and gifted property. Section 598.21 provides in relevant part:

1. ... The court shall divide all property, except inherited property or gifts received by one party, equitably between the parties....

2. Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

The record very clearly indicates that the $29,000 in gifts were made not to *one party* or to *either party* but to *both parties*.

We recognize that it is unlikely that Carolyn would have received the gifts had she not been married to Lowell, that the gifts were motivated by estate tax considerations, and that Lowell's inheritance may be reduced by the gifts made to himself and Carolyn. We do *not* find, however, that the trial court's refusal, under these circumstances, to credit the entire amount of the gifts from Lowell's parents to Lowell, was inequitable. We reject Lowell's argument that the trial court's treatment of the parental gifts was inequitable.

■ Lowell also asks that he be given credit for the $4,000 from his parents that went toward Kevin's educational expenses, arguing that to do otherwise is not equitable. This we likewise decline to do. The money received by Kevin from his grandparents was to be used for college expenses. Under these circumstances, we cannot conclude that our refusal to divide the property is inequitable to the other party or to the children of the marriage.

## II. *Property Division*

■ Lowell argues that the trial court's property division was inequitable. The ultimate question is whether the property division was equitable. We have rejected any rule based on a percentage division of the assets, and recognize that we must determine what is equitable under the specific facts of each case. *In re Marriage of Lattig*, 318 N.W.2d 811, 814 (Iowa Ct.App. 1982); *In re Marriage of Callenius*, 309 N.W.2d 510, 511, 514 (Iowa 1981).

■ Each party argues that their contributions or sacrifices to the marriage exceed those of the other party. Our de novo review indicates we have two healthy individuals who have, during the marriage, obtained high levels of education and tenure in their respective vocations. They are both currently employed and have the potential for comparable incomes. They both contributed to the marriage in different ways, but neither has made extraordinary sacrifices, nor does either leave this union under a substantial disadvantage. "Our law does not contemplate a division of property on a price-per-hour basis, as though marriage is a business venture. Husband and wife need not, during happy days, keep a ledger to prove his or her economic value should the marriage later founder." *In re Marriage of Briggs*, 225 N.W.2d 911, 913 (Iowa 1975). We agree with the trial court that this is a situation calling for a nearly equal division of the marital assets. We therefore review the trial court's decision to determine whether an essentially equal division was made.

■ The trial court has not provided us with its computations, nor has Lowell provided us with any computations, in support of his argument that the division is not equitable. Lowell specifically argues that the trial judges incorrectly failed to consider Carolyn's IPERS benefits and failed to consider the tax consequences to him of cashing a retirement account. He also claims that the trial court incorrectly determined money Carolyn spent for family purpose during the separation in computing the division. We agree that Carolyn's IPERS benefits, as well as Lowell's pension fund, should have been considered in the property division based on current worth. *See In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982).

■ We further agree that the tax consequences of the division to the parties must be considered by the court. Iowa Code section 598.21(1)(j) provides, with reference to factors to be considered by the trial court in a property division, that the court shall consider "[t]he tax conse-

quences to each party." We find, under the record here, that in reviewing the trial court's division of property, we should make a determination of the assets of the marriage at the time of trial, and we therefore have not adjusted the assets by any expenditures made during the separation. *See Locke v. Locke*, 246 N.W.2d 246, 252 (Iowa 1976). After carefully considering the factors set forth in Iowa Code section 598.21(1) with respect to property division, we determine that the trial court's decree dividing the parties' assets is equitable. We see no reason to disturb the property award.

### III. *College Expenses*

 Lowell was ordered to pay Carolyn $200 per month for support while either or both of the boys are attending college, or until the last child reaches 22 years of age. In addition, Lowell was ordered to pay $2,000 per year per son as long as each was pursuing legitimate higher education. The $2,000 was to be paid to each son to be used for college expenses. Lowell was further ordered to maintain existing health insurance on the boys and pay one-half of their uninsured medical expenses. Carolyn, on the other hand, was ordered to maintain a home for the boys during college vacations and to assist with their college expenses as she saw fit. She was also ordered to maintain existing health insurance on the boys and to pay the remaining one-half of their uninsured medical expenses. Both children are now over 18 years of age. Craig, however, did not turn 18 until October, 1983. The decree was entered on July 27, 1983. Under Iowa law, support must cease when a child reaches the age of eighteen unless the evidence establishes that one of the statutory provisions applies. *Locke v. Locke*, 246 N.W.2d 246, 250 (Iowa 1976); *In re Marriage of Briggs*, 225 N.W.2d 911, 914 (Iowa 1975). Iowa Code section 598.21(4) provides in part:

> Upon every judgment of annulment, dissolution, or separate maintenance, the court may order *either parent or both parents* to pay an amount reasonable

and necessary for support of a child . . . . [emphasis added]

"Support" is defined in Iowa Code section 598.1(2) (1983), which provides in part:

> . . . Such obligations may include support for a child who is between the ages of eighteen and twenty-two years who . . . is, in good faith, a full-time student in a college, university, or area school. . . .

The statute imposes an obligation on divorced parents toward their adult offspring to support them while they are attending college. We note that no corresponding statutory obligation is imposed on married parents of adult students. The Iowa Supreme Court upheld the constitutionality of the statute in *In re Marriage of Vrban*, 293 N.W.2d 198, 203 (Iowa 1980), and said:

> It [§ 598.1(2) ] does not require such support in all cases. It allows the trial court, in its discretion, to award support of the children through college under the proper circumstances. Among the factors to be considered are the financial conditions of the parents, ability of the child for college work, age of the child, and whether the child is self sustaining or not.

Applying the dictates of the statute as interpreted by the supreme court in *Vrban*, we determine that Kevin and Craig are persons who may require support under section 598.1(2). They are or will be full-time college students. They will pursue their education in good faith. Their parents are both college graduates. They are not self-sustaining and cannot be self-sustaining during the time they are full-time students.

 We must next address the level of support they should receive. To reach a just and equitable determination, we must consider the parties' age, present earning capacity, future prospects, amount of resources owned by each or both parties, contribution of each to the joint accumulations, the children, duration of the marriage, indebtedness of each or both, and any other relevant factors. *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976).

Both parties leave the marriage with a minimum amount of assets, but few debts. Other than social security and limited pension rights at age 45, they have few provisions for their retirement. They are both employed, however, and their salaries exceed their conservative individual needs. They both indicate a desire to have the children receive a college education and have each made substantial contributions to Kevin during his first year of college. We find that both parents have the ability to contribute to the children's higher education.

▰▰▰ Because of the boys' age, no custody award was made. Kevin attended summer school in 1983 and went to Colorado for spring break. He has returned to his mother's home in Waterloo on weekends. Lowell's home in Oregon is open to his sons. He would like to have them come to Oregon and take summer jobs.

The average projected costs at Iowa State University are about $5,000 per year. Grants, awards, and loans are available to reduce these costs. The boys are capable and able to maintain part-time employment. We must determine, in our de novo review, what portion of educational costs these parents should be required to provide for the children. We first determine that the expenses imposed by the trial court on Lowell are excessive and should be modified.

▰▰▰ We next address the issue of whether or not Carolyn should also be ordered to contribute to the children's higher education. The parties have not given us, nor do we find any, cases in Iowa on point. Iowa Code section 598.21 (1983) clearly provides that support can be obtained from *both* parents. Historically, case law on this issue has evolved under the assumption that the custodial parent will be fair to their child while the non-custodial parent may not.

The Iowa Supreme Court said of section 598.21:

> The statute was designed to meet a specific and limited problem, one which the legislature could reasonably find exist

only when a home is split by divorce ... [E]ven well-intentioned parents, when deprived of the custody of their children, sometimes react by refusing to support them as they would if the family unit had been preserved.

*In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980). At common law, a father is primarily liable for the support of his children. However, in this state by reason of section 597.14, which provides the reasonable and necessary expenses of the family are chargeable upon the property of both husband and wife, the view prevails that the same legal obligations rest upon both husband and wife, not necessarily equally but proportionately according to their ability and circumstances. *In re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973). A college education is valuable and desirable for every child. It is the duty and responsibility of *both parents* to furnish financial assistance for higher education in such an amount as *their financial condition will permit*. *Sandler v. Sandler*, 165 N.W.2d 799, 802 (Iowa 1969).

▰▰▰ The trend of recent authority is to the effect that under modern conditions and in proper cases, education beyond that provided in common schools may be a necessity which a parent is obliged to provide for his child, and that a parent *able to do so* may be required to bear the expenses of a college education for a child evincing an aptitude therefor. *Gerk v. Gerk*, 259 Iowa 293, 300, 144 N.W.2d 104, 109 (1966). It is very clear that the parental obligation for college expenses, like the parental obligation for child support, knows no gender and that Carolyn as well as Lowell can be held responsible for support.

Lowell contends their contributions should be equal. Carolyn argues that the provisions are fair because she shouldered a greater burden during the separation and because she will maintain a "home base" for the boys while in college.

The record indicates that Lowell has contributed substantially to Kevin's college expenses. He obtained $4,000 from his parents, which admittedly may be a charge on

his inheritance, for Kevin's education. He made contributions to the boys, and allowed Carolyn to use a pension account he had established to supplement expenses during the separation. At times he sent one-half of his paycheck to help with family expenses. The needs of Carolyn and the boys were high after the separation and Carolyn was left to assume physical care and responsibility for two teenage sons. The fact is that a husband and wife can live more cheaply together than apart. Few marriages terminate without both parties feeling financial stress. A divorce does not, ipso facto, increase the total family income, while it inevitably adds to the expense of living for the family members. *Weiland v. Weiland*, 255 Iowa 477, 482, 122 N.W.2d 837, 840 (1963). We find no reluctance on the part of Lowell in assuming his fair share of the burden of assisting his sons in their educational goals. Carolyn appears to believe that her contribution toward their higher education should be limited to providing the boys with a "home base."

Lowell argues that the boys really don't need a "home base." Kevin attended summer school and went to Colorado during spring break. Lowell testified he would like to have the boys with him in Oregon over the summer months. While the homes of both parties are open to the children, Carolyn, because of her close proximity to Iowa State University, will necessarily assist with many miscellaneous expenses by way of the weekend trip home, the food taken back on weekends, the transportation, and phone calls. However, it is likely that the boys will visit their father too. He is maintaining a home that is open to them.

While giving consideration to the additional expenses she will incur because of her close proximity to Iowa State University, we find no basis in the record to support Carolyn's argument that the maintenance of her home as a "home base" is necessary for support of the boys. Iowa Code section 598.21(4) provides for payments of "an amount reasonable and necessary for the support of a child." Support and maintenance as referred to in section 598.21 must be determined under the definition of support in section 598.1(2). *In re Marriage of Briggs*, 225 N.W.2d 911, 914 (Iowa 1975). We have a duty to carefully balance the needs of the children with the financial assets and earnings of the parents. That a college education is desirable is not questioned by anyone. However, the cost of that education must not exceed an amount that the party liable for it is able to pay. *Johnstone v. Johnstone*, 226 Iowa 503, 509, 284 N.W. 379 (1939). We must be mindful not only of the needs of the children, but of the divorced parents. They should support their children as best they can. But it will not do to burden them to the extent that all incentive is destroyed. Some balance must be found between the needs of the children and the parents' ability to pay. *Weiland v. Weiland*, 255 Iowa 477, 482, 122 N.W.2d 837, 840 (1963). We need to be concerned that our statutorily mandated entry into the educational decisions of a family which, absent this dissolution they would have resolved among themselves, does not hamper the relationship between parents and children.

We determine, after reviewing the particular circumstances of this case, that the record supports equal financial support from both parents. Carolyn has a higher income, but will be providing more incidental support than will Lowell. Carolyn testified that the boys could manage their money if payments were made directly to them. We therefore hold that such payments be sent to the boys in monthly installments. The decree is modified as follows:

(1) The $200 per month support Lowell was ordered to pay Carolyn shall be payable $200 on July 27, 1983, $200 on August 27, 1983, and $200 on September 27, 1983, at which time Lowell's obligation to make such monthly support payments shall cease. This amount shall be paid as support for Craig, who became 18 on October 7, 1983;

(2) Lowell shall *not* be required to pay the $2,000 annually to each boy as ordered by the trial court;

(3) Commencing August 27, 1983, Lowell and Carolyn shall *each* pay to Kevin,

and commencing October 27, 1984, Lowell and Carolyn shall each pay to Craig, the sum of $125 per month, to continue as long as they in good faith remain college students. In no event shall the payments be made to a child who is married or has reached the age of 22; and

(4) Either parent may, if they so elect, make said payments directly to the children's college to be credited to the child's expenses.

## IV. *Attorney Fees*

■ Carolyn has requested attorney fees on appeal. She received an equitable share of the marital assets, and her earnings are in excess of Lowell's. We therefore decline to award her attorney fees on appeal.

## V. *Health Insurance*

■ Carolyn pays over $50 per month to obtain medical coverage for the boys.

Lowell also has medical coverage for the children. The cost to him does not appear in the record, though we would assume the costs are similar. The trial court ordered both parties to continue the health insurance coverage. Rather than having both parties carry separate health insurance policies, we modify the decree to provide that Carolyn maintain the health insurance on the boys, and that Lowell reimburse her for one-half of the cost of such coverage.

Costs on appeal are taxed one-half to each party.

AFFIRMED AS MODIFIED.