**In re the MARRIAGE OF Kenlyn Rena WAHLERT and Joel Len Wahlert,**

**Upon the Petition of Kenlyn Rena Wahlert, Appellee,**

**and Concerning Joel Len Wahlert, Appellant.**

No. 85–1714.

Supreme Court of Iowa.

Feb. 18, 1987.

558

David R. Gault, Des Moines, for appellant.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

McGIVERIN, Justice.

Petitioner Kenlyn Rena Wahlert filed a petition for modification of the dissolution decree, seeking increased child support and reassignment of income tax exemptions. Respondent Joel Len Wahlert also filed a petition for modification, seeking a reduction in child support, assessment of health insurance and travel expenses of their children to Kenlyn, and visitation during the children's summer vacation. The district court reduced the child support obligation of Joel, reassigned one tax exemption to Kenlyn, granted Joel one month of summer visitation, and required Joel to maintain the children's health insurance, to pay their travel expenses for visitation, and to pay $300 toward Kenlyn's attorney fees. Upon consideration of the issues raised by Joel's appeal, we affirm as modified the decision of the district court.

I. *Background facts and procedures.* On February 2, 1982, a decree of dissolution was entered terminating the five-year marriage of Kenlyn and Joel Wahlert. Custody of their two minor children, born in 1978 and 1981, was awarded to Kenlyn. Iowa Code section 598.21(4) (1981) provided that the court could order either or both of the parents to contribute to the support of the children. The decree required Joel to maintain hospital insurance for the children and to pay for all dental and noncovered medical bills and to pay child support of $150 per month per child to Kenlyn. Joel was awarded the two dependency exemptions for the children for income tax purposes. He was granted visitation with the children on two weekends each month.

Joel stayed current on his child support obligations, except for a two-month lapse in hospital insurance coverage, until Kenlyn and the children moved to Arizona in March 1985. At that time Joel reduced his payments to Kenlyn from $300 per month to $20 per month.

On July 15, 1983, Joel petitioned for modification of the decree of dissolution, requesting that the court place the children in his custody. Kenlyn responded on July 21, asking the court to cite Joel for contempt for a lapse in the children's insurance coverage, requesting that child support be increased to $400 per month and one tax exemption be reassigned to her, and seeking a change in Joel's visitation rights.

Joel amended his application for modification on August 29, 1985. He no longer sought custody of the children, rather he sought a reduction in child support, visitation during the children's entire summer vacation and payment of the children's travel expenses and health and dental insurance by Kenlyn with the parties sharing all noncovered medical and dental expenses.

The court, after evidentiary hearing, modified the decree in the following respects: (1) reduction of child support payments by Joel from $150 per month per child to $120 per month per child; (2) reassignment of one of the tax exemptions from Joel to Kenlyn; and (3) allowance of visitation with the children by Joel for one month during the summer. The court further ordered that Joel pay the children's travel expenses for visitation and maintain health and accident insurance coverage on the children; and assessed $300 of Kenlyn's attorney fees to Joel. It is from this modification that Joel appeals. Kenlyn has filed no brief nor taken any active part in this appeal. *See* Iowa R.App.P. 13(f).

■ Our review of the district court's modification of the dissolution decree provisions is de novo. *See In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983); Iowa R.App.P. 4.

II. *Joel's requests for modification.* Courts have the authority to modify dissolution decrees when there has been a substantial change in circumstances. Iowa Code § 598.21(8) (1985); *see Vetternack,* 334 N.W.2d at 762. The district court in this case concluded that there had been a substantial change in Joel's financial condition based on the depressed farm economy. It then reduced the child support obligation, stating that farming did not represent Joel's best earning capacity. The re-

duction was based on Joel's court-projected earning capacity.

Joel asserts that the manner in which the court modified his obligation based on a generalized "best" earning capacity rather than his farming earning capacity, when the only testimony referred to his earnings as a farmer, was inequitable. He claims that his decrease in income warranted more favorable terms from his perspective in the modification.

■■■ The trial court has reasonable discretion in passing upon the advisability or necessity for modification of a dissolution decree provision. On appeal, we will not disturb the trial court's conclusion unless there has been a failure to do equity. *Vetternack*, 334 N.W.2d at 762; *Norenberg v. Norenberg*, 168 N.W.2d 794, 797 (Iowa 1969). We reach our conclusion, as to whether equity has been done, based on our de novo review. Iowa R.App.P. 4. As a general rule, a modification should be granted if there has been a substantial lowering of earning power for a sustained period of time. *Gesmacher v. Gesmacher*, 247 Iowa 836, 840, 76 N.W.2d 790, 792 (1956); *see also* Annotation, *Change in Financial Condition or Needs of Parents or Children as Ground for Modification of Decree for Child Support Payments*, 89 A.L.R.2d 7, 39 (1963). This rule does not apply when a payor parent voluntarily reduces his or her income. *Ellis v. Ellis*, 262 N.W.2d 265, 268 (Iowa 1978); *Reed v. Reed*, 260 Iowa 1166, 1168, 152 N.W.2d 190, 191 (1967).

We are faced with a situation in which the payor parent has not voluntarily reduced his income, but is continuing in an occupation that does not live up to his earning capacity nor does it allow him to remain current on his child support obligations. Joel claims that the court can review only his actual earnings, not his earning capacity, in setting the level of child support in a modification proceeding.

Our court of appeals has held that in setting an initial award of child support it is appropriate to consider the earning capacity of the parents. *In re Marriage of Byall*, 353 N.W.2d 103, 107 (Iowa Ct.App.

1984). Earning capacity is one of the "other factors" to be considered in fixing child support. *Id.* at 107–08; *see* Iowa Code § 598.21(4)(i).

In the case of *In re Marriage of Vetternack*, we reviewed the trial court's denial of a reduction in child support following the payor's incarceration for the commission of a felony. 334 N.W.2d at 761. We noted that Iowa Code section 598.21(8) (1981) stated:

Any change in child support because of alleged change in circumstances *shall take into consideration* each parent's *earning capacity*, economic circumstances and cost of living.

334 N.W.2d at 762 (emphasis added). After a thorough review of Iowa cases in which modification has been sought after a reduction in income, we commented:

current inability to pay has become less a consideration and long range capacity to earn money has become more of a consideration; and ... any voluntariness in diminished earning capacity has become increasingly an impediment to modification.

*Id.* at 763; *see also* 1985 Iowa Acts ch. 178, § 7 (codified as amended at Iowa Code § 598.21(8)(a), (k) (Supp.1985)) (In modification proceeding, court shall consider change in earning capacity and other relevant factors.). We agreed with the trial court's *denial* of suspension of payments during the payor's period of incarceration.

We must apply these principles in determining if the court's modification was equitable. Joel testified at the modification hearing that his income had changed substantially from the income used in setting the child support award. He testified that he had an adjusted gross income for income tax purposes of $16,234.97 in 1981, $3,003.40 in 1982, $5,505 in 1983, and $7,147 in 1984. He estimated that in 1985 for tax purposes he would have taxable income of $141.41 and in 1986 a loss of nearly $4,000. Some non-cash items, such as machinery depreciation, were listed as deductions on his tax returns. A farmer for all of his adult life, Joel, age 29, stated

that to generate additional income he could perform only manual labor for agriculture related enterprises. The court considered this testimony in concluding that Joel was a semiskilled, able-bodied laborer who had an earning capacity greatly in excess of the taxable income from farming shown in his recent income tax returns. His second wife is employed in a nursing home making $5,450 per year. Joel's earning capacity added with his wife's earnings would give his new family of three an adequate amount on which to live and pay support for his two children from the prior marriage.

Kenlyn's financial circumstances also must be considered. She has not remarried. She is employed at a retirement home, making $4.20 per hour, or $8,400 per year. She supports herself and the two children on this amount, plus any child support Joel pays under court order. From March 1985 when Kenlyn and the children moved to Arizona until October of that year when Joel testified at the modification proceeding, Joel paid only $20 per month of his $300 per month child support obligation. Neither Kenlyn nor Joel incurs expenses for housing or rent because Kenlyn and the children live with her parents in Arizona, and Joel, his second wife and their child live in a home owned by his parents.

■ We cannot say that the district court ruled inequitably in finding a substantial change in circumstances and in only lowering Joel's child support obligation $60 per month. The original decree was based on Joel's 1981 taxable income of $16,000. The court evaluated Joel's lower earning capacity based on his testimony that he could perform only farm related tasks for agricultural operations. The change in his actual farm income was not continuous and permanent enough to warrant a greater reduction in his child support obligation. Based on the court's evaluation, it ordered Joel to pay $240 per month rather than the $100 Joel thought he might be capable of paying or the $400 Kenlyn requested. We, therefore, affirm the district court's reduction of child support payments to $240 per month.

■ Joel also claims the district court erred in maintaining the requirement that he provide medical insurance and pay all the dental and noncovered medical expenses for the two children. It was clear from Kenlyn's testimony that she was willing to pay for the expense of medical insurance on the children if the child support obligation was adjusted to the figure she requested. Due to the fact that child support had not been increased, the court recognized that there would be practical problems for Kenlyn in shifting the responsibility for insurance to her. We conclude that the district court's action with regard to insurance was not inequitable.

■ Joel claims the district court should have awarded him visitation for the children's entire summer vacation. The court allowed one month of summer visitation. The court must have considered the disruptive effect a three-month absence from Arizona would have on the children's lives. We cannot say that the court's ruling was incorrect in limiting visitation.

■ Joel claims that Kenlyn should be responsible for the travel expenses of the children when they come to Iowa for visitation. The district court required Joel to pay these expenses. Joel states that prior to Kenlyn's move to Arizona he could drive from his home near Exira to Des Moines to visit the children. He asserts that Kenlyn's removal of the children from Iowa made his exercise of visitation rights less frequent and more expensive. At oral argument, he stated that it would be equitable for this court to require him and Kenlyn to share these expenses equally. We agree and find it equitable to require Joel and Kenlyn to share equally the children's travel expenses to Iowa; thus, we modify the district court's ruling in that respect.

■ The district court reassigned the tax exemption for Joel and Kenlyn's youngest child to Kenlyn. It also stated that Joel could claim the other exemption only so

long as he is current in his support obligations. Joel argues the reassignment of one of the tax exemptions was inequitable. We conclude that Joel should be allowed both exemptions if he is current for all of his child support at the end of the taxable year for which Joel wants to claim the exemptions; otherwise, Kenlyn shall be entitled to the exemptions for that taxable year.

Finally, Joel argues that he should not be responsible for $300 of Kenlyn's attorney fees. While noting that neither party could afford the fees, the court made Joel responsible for $300 of Kenlyn's fees. We will not disturb the ruling.

III. *Disposition.* We affirm the district court ruling in its reduction of child support payments; limitation of visitation by Joel to one summer month; and allocation of responsibility for the children's medical insurance and health related expenses and $300 of Kenlyn's attorney fees to Joel. We modify the district court's ruling (1) by requiring Joel and Kenlyn to share equally the children's travel expenses for summer visitation; and (2) concerning the income tax exemptions as stated above.

AFFIRMED AS MODIFIED.