In re the **MARRIAGE OF Michael R. LUDWIG and Catherine A. Ludwig**

Upon the Petition of **Michael R. Ludwig, Appellant,**

And Concerning **Catherine A. Ludwig, Appellee.**

No. 90–1227.

Court of Appeals of Iowa.

Oct. 29, 1991.

Robert L. Sudmeier and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellant.

Chad C. Leitch of O'Connor & Thomas, P.C., Dubuque, for appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Michael and Catherine Ludwig were married in July 1976. Their marriage was dissolved by decree in July 1990. They have two children, a girl born in September 1978 and a boy born in April 1981. The boy is mentally retarded and suffers from seizures and a cleft palate. The dissolution decree placed the children in joint legal custody and in Catherine's primary physical care. These custody provisions are not challenged in this appeal.

Michael is employed as the manager of one of several laundry businesses owned by his extended family. Michael is also a stockholder in the family corporation. His gross earnings were around $32,000 in 1988 and about $38,000 in 1989.

Catherine is also employed in one of the laundry businesses owned by Michael's family. She earns about $14,000 per year. She is on good terms with Michael's extended family and receives assistance of various sorts from his relatives.

The dissolution decree awarded Michael all of his stock in the family corporation. This stock was difficult to value; the court found that its value "did not exceed $60,500." Michael also received a $4,800 IRA account. Each party was awarded the house in which he or she is living; Catherine's house has a net equity of about $19,000, while Michael's house has a net equity of only $2,700. Each party also received a car, furniture, and various nominal assets.

The decree directed Michael to pay child support of $100 per child per week until each child reaches the age of nineteen, dies, marries, finishes high school, or becomes emancipated, whichever occurs first. Child support will then terminate unless the child qualifies for continued support under Iowa Code section 598.1(2). The decree provided for annual cost-of-living increases in child support; these increases are keyed to the federal cost-of-living index.

The decree directed Michael to pay Catherine alimony of $200 per month until October 1, 1996, and $400 per month thereafter. This alimony will terminate upon Catherine's remarriage or upon the death of either party.

Michael has appealed from the dissolution decree, challenging the awards of alimony and child support to Catherine. He contends the alimony award should be eliminated entirely. He does not challenge the initial amount of the child support award, except to argue that it should be reduced if the alimony award is left intact. However, he does challenge the provision for annual cost-of-living increases in the child support. He also challenges the provision that child support will continue until each child reaches the age of nineteen, unless other conditions are met. He argues that the age for termination of the child support should be eighteen rather than nineteen.

Catherine requests attorney's fees on appeal. Her attorney has submitted a statement showing that he plans to charge her $1,907.87 for services rendered on appeal.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## I. *Alimony.*

■ Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of*

*Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.21(3). *See In re Marriage of Hayne*, 334 N.W.2d 347 (Iowa App.1983). Property division and alimony must be considered together in evaluating their individual sufficiency. *In re Marriage of Dahl*, 418 N.W.2d 358, 359 (Iowa App.1987). Property inherited by or gifted to one marriage partner is not subject to division unless the failure to do so would be unjust. *Id.* at 360. We are mindful of the various types of alimony as set out in the Iowa Supreme Court case of *In re Marriage of Francis*, 442 N.W.2d 59 (Iowa 1989).

■ Upon reviewing the facts of this case, we are convinced the trial court did not err in its award of alimony. Three primary factors influence our decision.

First, there is evidence the couple's youngest child, James, is profoundly mentally retarded. Without the continuing care of one of his parents, he most likely would be institutionalized. It is likely he will continue to need this specialized care for the rest of his life. Neither parent desires to have him institutionalized. Catherine, as his primary caretaker, will have the burden of caring for him, possibly for the rest of her life.

Second, the trial court allowed Michael to keep all his stock in his family's closely-held company. This stock was valued at approximately $60,000. In addition, the evidence indicates Catherine was instrumental in helping Michael attain and keep these assets by helping him run his family-owned business. Catherine did not receive comparable property, other perhaps than the house with about $19,000 equity.

Third, there is a substantial disparity in the parties' earnings. Catherine makes about $14,000 per year. In 1989, Michael made $38,000. He will undoubtedly continue to earn this much and perhaps more. On the other hand, Catherine's ability to increase her earnings is limited not only by her being out of the work force for several years but by her need to care for James.

For these and the other reasons set out by the trial court, we affirm the alimony award.

## II. *Child Support.*

Michael next asks us to reduce his child support obligations if we do not reduce his alimony payments. He asks his child support obligation be reduced to the child support guidelines level.

■ In our review we first point out child support and alimony or spousal support are separate and distinct. The considerations behind the two awards, while sometimes parallel, are also separate and distinct. *See* Iowa Code §§ 598.21(3) and 598.21(5) (concerning child support guidelines).

■ The child support guidelines are mandatory, unless the court makes written findings an adjustment is "necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case." *See* Supreme Court Order re: Child Support Guidelines, Dec. 31, 1990. James's condition is such a "special circumstance." However, no such special circumstance exists justifying a departure from the guidelines for the parties' daughter.

Much financial data is included in the record. Based upon our review of the evidence, we determine Michael's net monthly income to be $2,232. We determine Catherine's net monthly income to be $973.

■ We are to apply the current child support guidelines in fixing the non-custodial parent's support obligation. *See In re Marriage of Bergfeld*, 465 N.W.2d 865, 871 (Iowa 1991). We determine the guideline amount for these two children is $685.22. We modify the decree accordingly.

James's special conditions, however, justify an upward departure from these guidelines for him. At the trial Michael had agreed to pay $200 per week child support. We determine James should have an extra $125 child support a month. It is not disputed that James has special needs. He will need special care and education. We modify the child support award to include an additional $125 per month for James over the guideline amount of $685.22.

## III. *The COLA Provision.*

■ Michael next complains the cost of living adjustment (COLA) provision for child support is unwarranted. He contends, under the circumstances here, the new permanent child support guidelines preempt COLA provisions. We agree.

Application of the child support guidelines is governed by Iowa Code section 598.21(4). That section provides in pertinent part:

There shall be a rebuttable presumption that the amount of child support which would result from the application of the guidelines prescribed by the supreme court is the correct amount of child support to be awarded. A variation from the guidelines shall not be considered by a court without a record or written finding, based on stated reasons, that the guidelines would be unjust or inappropriate as determined under the criteria prescribed by the supreme court.

The Iowa Supreme Court has set out various reasons for deviating from the support guidelines. *See Bergfeld*, 465 N.W.2d at 869. The trial court must set out in writing its reason for departing from the guidelines. *Id.* It appears the trial court relied on the pre-guideline practice of attaching a COLA provision to the support order. *See, e.g., In re Marriage of Stamp*, 300 N.W.2d 275, 276–77 (Iowa 1980).

The new child support guidelines are designed to achieve state-wide uniformity in child support awards. They were set up pursuant to a federal mandate. *See* Family Support Act of 1988, Pul.L. No. 100–485; *see also* H.F. 403, 73rd G.A., 1st Sess. § 6 (Iowa 1089) amending Iowa Code § 598.-21(4). The guidelines are subject to periodic review, at least once every four years. Iowa Code § 598.21(4). We assume this review will consider such items as cost of living increases.

■ If one party should experience a rise or decrease in income, either party may file for a modification of child support. *See Bergfeld*, 465 N.W.2d at 869–71. A

change in the support guidelines themselves will not justify a modification. *Id.* at 870. Otherwise, unless the trial court specifically finds in writing a departure is warranted, the guidelines are presumed correct. *Id.* at 869–70.

We determine this rationale applies to James's support award as well. James's support is set at a higher monthly amount than provided in the guidelines. However, we note in regular cases the trial court sets the initial award according to the guidelines. Thereafter, the amount remains static even if the guidelines or the parties' relative income changes. The parties must file for modification if the original support award is to be adjusted. *See id.* at 869.

Just as a party must file to modify a guidelines support order, so too a party must now file to modify a non-guideline support order. We determine, under the circumstances here, the trial court erred by including a COLA provision in the dissolution decree. We therefore modify the decree by deleting the COLA provision.

IV. *Child Support Termination.*

■ Michael additionally challenges the termination of child support at the age of nineteen rather than eighteen. We look to Iowa case law.

Under Iowa law, support must cease when a child reaches the age of eighteen unless the evidence establishes that one of the statutory provisions applies.

*In re Marriage of Byall,* 353 N.W.2d 103, 107 (Iowa App.1984) (citing *Locke v. Locke,* 246 N.W.2d 246, 250 (Iowa 1976); *In re Marriage of Briggs,* 225 N.W.2d 911, 914 (Iowa 1975)).

We thus modify the trial court's decree to state:

This child support obligation shall continue for each child until the first of any of the following occurs: 1) the child becomes eighteen years of age or finishes high school, whichever occurs last; 2) dies; 3) marries; 4) becomes self-sustaining; or 5) becomes otherwise emancipated. When the first of any of these events occurs, the child support payments shall terminate unless a child meets the qualifications of Iowa Code

section 598.1(2) for continuance of child support.

In summary, we modify the child support award by deleting the COLA provision and reducing the age to terminate child support to eighteen, subject to Iowa Code section 598.1(2). In addition, we modify the child support amount in the manner set forth in this opinion.

We affirm the trial court in all other respects.

Catherine is awarded $1,000 appellate attorney fees.

Costs of this appeal are taxed one-half to each party.

AFFIRMED AS MODIFIED.