In re the MARRIAGE OF Mary R. FREESE and Milan W. Freese.

Upon the Petition of Mary R. FREESE, Appellant, and concerning Milan W. FREESE, Appellee.

No. 2–56382.

Supreme Court of Iowa.

March 19, 1975.

James L. Chipokas and Jon M. Kinnamon, Cedar Rapids, for appellant.

William J. Matias, Cedar Rapids, for appellee.

Submitted to MOORE, C. J., and RAWLINGS, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This is an appeal from alimony and property awards made by trial court in a marriage dissolution decree. We modify and remand.

Mary (petitioner-appellant) and Milan (respondent-appellee) were married May 31, 1941. At trial time Mary was 57 years of age, Milan was 53, and they had been living separately for two years. Their three children were Linda, age 26, Rick, age 22, and Sally, age 17. Only Sally was still at home.

These parties had no property when they married. Milan admitted, and trial court found, Mary had helped accumulate the property which occasions this dispute. Besides being a homemaker, Mary had driven a truck in Milan's business and answered the telephone. During the last six years of marriage she had employment doing janitorial and maid work. Her current hospital job at trial time included heavy clean-up after surgery in the operating room. Her current take-home pay is $86 per week. Mary's age and varicose veins (for which she has undergone surgery three times) will limit her long-term ability to continue her present employment.

Milan owns and operates a sand plant and has been a capable operator. He is equipped for, and occasionally does, well-drilling. April 1972, he suffered a back injury which left him hospitalized for about a month. A combination of this injury, an arthritic condition, and bad weather resulted in a lowered income and financial problems. There is also an indication the pending marriage dissolution action may have diminished his business efforts. Relative to a lease on a second source of sand, he was asked the following questions and made the following responses:

"Q. Have you renewed that lease out there? A. No. I was waiting to see how this divorce proceedings was coming out before I put any more money in the property.

"Q. In other words you want to see what your wife gets before you go back to working it, is that correct? A. Right. Right.

"Q. In other words if she gets too much you are not going to go back to work? A. I will just leave the country."

The record persuasively supports trial court's finding the parties' gross assets were $101,000 in value and liabilities were $44,000, leaving net assets of $57,000.

Trial court calculated it gave Mary 45 percent of the net assets by awarding her

the family homestead which includes one and one-half acre tract, the furniture, various personal items, an old automobile, one-half the sale price of two Minnesota lots, and by charging her with $12,000 of a $26,000 mortgage which encumbered both the home and an adjoining business property.

Milan received that portion of their rural tract comprising the shop buildings and surrounding area. He was awarded all his business and office equipment, the sand plant real estate, various personal property and an old auto. He was ordered to pay all the parties' liabilities except $12,000 on the mortgage above noted.

Trial court awarded Mary $15 per week alimony until death of either party or until Mary's remarriage. Mary was given custody of Sally. Milan was ordered to pay $15 per week child support until April of 1973 when this child became 18. He was ordered to pay for Sally's insurance until she reached 21 or married, and to pay $750 of Mary's district court attorney fees.

I. Our review is *de novo*. Trial court's findings are given weight but are not binding on this court. In re Marriage of Ballinger, 222 N.W.2d 738, 740 (Iowa 1974). Although allocations of support money, alimony and property have a different purpose, they are closely related in determination of the amount to be awarded. In re Marriage of Peterson, 227 N.W.2d 139 (Iowa 1975). In evaluating the alimony and property awards we use the criteria explained in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding consideration of reward or punishment on the basis of fault. In re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972).

II. It is asserted the alimony award for Mary should be increased to the sum of $37.50 per week. We of course weigh Mary's needs against Milan's resources and ability to pay. In re Marriage of Gudenkauf, 204 N.W.2d 586, 588 (Iowa 1973).

A partial itemization of Mary's expenses totaled approximately $400 per month. This included utilities but nothing for housing. The list also included a small expense for Sally, who would doubtlessly now be gone from the home or self-supporting. It did not include various other expenses including home insurance, taxes (the latter being $100 per month), needed repairs, furnishings, or presently required dental work. Nor does the above total contain any payment toward that portion of the mortgage to be charged to Mary.

To meet the above needs Mary has take-home wages of about $370 per month. The record does not reflect she is capable through education, training, or experience to work at any higher income level.

We also consider Milan's current indebtedness and decreased earnings. But trial court awarded him all the income-producing property, as only he could use it. We conclude he is capable of generating sufficient income from his business to meet the necessities of his operations and personal living expenses, and still provide Mary with alimony of $25 per week. Milan's recent purchase of several items of heavy business equipment demonstrates his faith in the future of his business.

It must be conceded Mary may find it impossible, even with this increased alimony, to continue to live alone in the family homestead, which is a large, modern ranch-style dwelling with breeze-way and attached double garage. Here as in most such cases, marriage dissolution creates financial stresses for both litigants. Frequently courts cannot distribute property or income to permit parties to continue a lifestyle enjoyed during marriage.

We hold the alimony award to Mary must be increased to $25 per week as of the date of the district court decree.

III. Mary contends trial court's property division was unfair. She asserts money generated by the $26,000 mortgage placed on the homestead and business real estate went into the business which was awarded to Milan and she should not be charged

with any part of it. She also asserts Milan dissipated their assets by making expensive gifts to his landlady, including two automobiles, a diamond ring, and a wrist watch. Milan acknowledged he gave the ring and watch, but testified he had not provided funds for the autos.

Milan valued the Minnesota lots at $3000 and appeared to have the most familiarity with them. There is no evidence these lots were of any different value. Trial court decreed this property should be sold and the proceeds divided.

We determine, under all the circumstances including Mary's potential income which will not permit her to pay substantial indebtedness, that she should be charged with only $8000 of the aforesaid mortgage and Milan should be awarded the Minnesota property. This will provide her with 50 percent of the net assets owned by these parties rather than 45 percent as computed and awarded by trial court. We can discern no reason why there should not be an equal division of the net assets, applying the guidelines laid down in *Schantz* and *Williams*, supra.

IV. Mary seeks an allowance for additional attorney fees and expenses incurred in this appeal. Almost all the expenses will be recovered when Milan pays the costs, which are charged against him. We do not fix the amount to be charged by Mary's attorney, but merely determine what portion, if any, should be paid by Milan. Briggs v. Briggs, 225 N.W.2d 911 (Iowa 1975). We hold Milan must pay $850 toward Mary's attorney fees. All additional amounts due must be paid by her.

Modified and remanded for entry of supplemental decree.