**In re the MARRIAGE OF Charles K. ANDERSEN and Marilyn F. Andersen.**

**Upon the Petition of Charles K. ANDERSEN, Appellee,**

**and Concerning Marilyn F. ANDERSEN, Appellant.**

No. 2–58906.

Supreme Court of Iowa.

June 30, 1976.

Raymond O. Snook, Glidden, for appellant.

Fred Louis, Jr., of Louis, Moore & Kohorst, Harlan, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, UHLENHOPP and HARRIS, JJ.

HARRIS, Justice.

Following a decree of dissolution of marriage the wife has brought this appeal, claiming the trial court was inequitable in determining the property rights of the parties. We modify, affirm and remand.

Charles K. Andersen (Charles) and Marilyn F. Andersen (Marilyn) were married March 4, 1956. Since 1958 they have farmed near Elk Horn. Charles was 41 at the time of trial and Marilyn was 38. Three children born of the marriage were 17, 16, and 13.

The record does not disclose Charles's educational background. He returned from the Marine Corps in 1955 and thereafter worked short periods of time for an aircraft factory and as a hog buyer before beginning to farm in 1958. Marilyn is a high school graduate. She worked approximately two years as a file clerk until birth of the first child in 1957. She also worked for about a year and one half some 14 years later as a part-time bookkeeper.

Neither Charles nor Marilyn had substantial money or assets at the time of their marriage. They rented a farm for three or four years, purchasing their present 314 acre farm on contract in 1961. Marilyn received an inheritance or gifts totaling about $3500 which at one time was used in part in the farming operation. It was later withdrawn and part of it was used to buy furnishings for the home. A balance of about $1600 remained in a savings account.

We find on our de novo review that the assets of the parties were acquired by Charles and Marilyn as a farm couple by their equal and joint efforts.

Property valuation was the most hotly controverted issue at trial. Our examination of the record leads us to agree with the findings of the trial court which placed the value of all farm assets, excluding horses of uncertain value, at $296,000. After deducting the indebtedness of the parties there remained a net worth of $125,000. This finding was approximately midpoint between the estimates of Charles's witnesses and Marilyn's witnesses.

There is no complaint of the award of custody of the three children to Marilyn or the order that Charles pay child support of $100 per month per child until each child reaches 18 years of age. Rather the complaint is the failure of the decree to achieve a 50–50 division of assets with mathematical certainty.

The central difficulty of the case and the fighting issue on appeal results from the trial court's attempt to avoid a forced sale of the farm. Believing it to be in the best interest of all concerned the trial court awarded Charles the farm, all grain, livestock except the horses heretofore mentioned, farm machinery and equipment, and vehicles except a 1972 Dodge automobile. The horses were ordered sold and, after subtracting the cost of sale, proceeds were to be divided one half to Marilyn and one half to Charles.

All household goods and the 1972 Dodge automobile were awarded to Marilyn. Marilyn was also given the right to live in the house on the farm until the youngest of the minor children reaches the age of 18 or is otherwise emancipated.

The trial court awarded Marilyn as alimony and property settlement the sum of $50,-000 payable $5000 within 90 days of entry of the decree, $3000 March 1, 1977 and $3000 on each succeeding March 1 thereafter until March 1, 1985 when all sums became due. Each payment provided for interest on the unpaid balance. Charles was directed to assume payment of all farm related liabilities totaling $168,616.57. Personal debts of $2243.21 were allocated 60 percent to Charles and 40 percent to Marilyn. Charles was ordered to pay $1250 toward Marilyn's attorney's fees.

The decree also provided that in the event Charles found it impossible to obtain the financing necessary to meet the installment payments required under the decree the property would be sold and the proceeds divided equally between Charles and Marilyn.

I. Marilyn objects to the award even if we agree the couple's net worth was $125,-000. She believes under the circumstances

she should receive at least one half on the basis of the equal contributions made by the parties toward obtaining those assets. She complains of the provision in decree allowing Charles to claim the children as income tax dependents. A further complaint is levied against a provision requiring her to pay $987 (40 percent) of the debts incurred for necessaries during the period of separation prior to trial. Marilyn suggests partitioning the real estate but more directly asks for the property to be sold, for all debts to be paid from the proceeds, and for the balance to be divided equally between the parties.

Charles claims Marilyn is receiving more under the decree than she would receive under a forced sale with its tax consequences. He points out the decree not only provides for $50,000 in installment payments (in addition to one half the horse proceeds and a car) but contemplates interest he says totals $23,760. He thinks his position is strengthened by the fact his wife is to have rent-free, tax-free use of their home until September of 1979, a period of some four years.

"As we have said over and over again, precedents are of little help in determining what is a fair division of assets between the parties to a dissolved marriage. Each case depends on its own peculiar circumstances. * * *." *In re Marriage of Briggs*, 225 N.W.2d 911, 912 (Iowa 1975). See *In re Marriage of Peterson*, 227 N.W.2d 139, 141 (Iowa 1975).

" * * * Although allocations of support money, alimony and property have a different purpose, they are closely related in determination of the amount to be awarded. (Authority). * * *." *In re Marriage of Freese*, 226 N.W.2d 800, 802 (Iowa 1975).

■ In *In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975) we rejected a contention we were bound to achieve "equal division" in property awards. It is true the facts of the instant case strongly call for an approximately equal division of assets. See generally *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), excluding reward or punishment on the basis of fault as explained in *In re Marriage of Winter*, 223 N.W.2d 165, 169 (Iowa 1974). But equal division, even when called for, need not be achieved with mathematical exactness. And precisely equal division should not be exacted by a plan which requires certain harm to one and probable harm to both of the parties. Resulting harm is a factor which the trial court may and should consider in connection with the goal of equal division.

We believe the trial court's award to Marilyn, while it might be considered conservative, was was within the range of the stated goal of equal division. It was reasonable for the trial court to fix the award and schedule the payments thereof so as to further the hope Charles might retain ownership of the farm. It is not inconceivable such retention might inure to the eventual benefit of the children.

We find merit in Charles's argument. A forced sale of the farm and its tax consequences might well net Marilyn less than the court's plan.

Upon our de novo review we agree with the general terms for property division decreed by the trial court, save only for the modifications noted in the following division.

■ II. The trial court granted child support of $100 per month for each child until such child reaches 18. Support for any such child under the plan might terminate prior to high school graduation. The record indicates this may already have occurred with the oldest child. We believe the child support in such event should continue until each child graduates from high school if that is after attainment of the age of 18, provided such child has been in regular attendance of high school until that time. Any support payments which have already been missed because the decree ended support upon attainment of age 18 should be due upon the filing of the opinion in this case.

Marilyn's right to occupy the farm home should be similarly extended, to terminate with the requirement for child support.

In an order entered February 6, 1976 payments to Marilyn under the trial court decree were suspended. Our order of February 6, 1976 is lifted effective with the filing of this decree and the trial court should fix a new time limit for refinancing and should provide for the same sanctions for noncompliance as were prescribed in the original decree.

The parties agree the terms "respondent" and "petitioner" as each first appears in paragraph 10, page 4 of the decree were inverted. The parties likewise agree that the word "petitioner" should be substituted for the word "respondent" in the third full paragraph on page 7 of the decree.

Charles is ordered and directed to pay $1000 toward the attorney's fees for Marilyn's counsel for his services in connection with this appeal. Said amount is in addition to any fees previously ordered.

As modified the decree of the trial court is affirmed and the case is remanded for further order in compliance herewith. Costs on appeal are taxed one half to Charles and one half to Marilyn.

MODIFIED, AFFIRMED AND RE-MANDED.